## No. 4832.

(Court of Appeal, Parish of Orleans.)

## DIBOLL, OWEN & GOLDSTEIN, LTD. vs. RENE GRUNEWALD.

L. R. Hoover for plaintiff and appellant.

Scott E. Beer for defendant and appellee.

GODCHAUX, J.—Plaintiff, a corporation engaged in the profession of architect, sues the defendant for services rendered the latter in the preparation of plans and specifications for the erection of a residence which the latter contemplated erecting, but which was in fact never erected. The employment of plaintiff for this purpose is admitted and it is further admitted that no specific and fixed compensation was agreed upon. The defense

is that while the plaintiff was employed for the purpose and in the manner above stated, the contract of employment contained an additional express stipulation to the effect that the plaintiff warranted and bound itself to provide plans and specifications for a structure, the cost of which would in no event exceed $6,500.00 or $7,000.00, and that this stipulation was violated in that the lowest price at which the building could be erected, under said plans, was considerably in excess of the maximum cost as stipulated.

The only witnesses present or participating in the making of the contract were Owen, the secretary of the plaintiff corporation, and the defendant himself. The testimony of the latter is positive to the effect that it was agreed that the plans and specifications would provide a building to cost within the sum stated, while the testimony of the former is equally positive and insistent that the contract contained no such stipulation.

To determine the true contract that existed or was proved, recourse must, therefore, be had to other facts and circumstances disclosed in the record.

The testimony shows that the defendant at the time of the employment did in fact mention that he desired to expend in the neighborhood of sixty-five hundred ($6,500.00) dollars for the erection of the contemplated residence, and directed the plaintiff to call on defendant's wife for instructions, directions and information as to the nature, character and detail of the structure desired —the wife apparently being given plenary power and discretion in this respect. In fact, thereafter practically all negotiations were had directly with her, and it was entirely due to the fact that both she and the husband insisted upon procuring a structure that could not be erected within the maximum sum mentioned, that it was concluded not to construct the residence. It would thus

appear that if defendant's version of the contract is true, then there was not only a stipulation as to the maximum cost, but the nature and character of the structure to be erected was left to the discretion of the defendant and his wife. If such a contract existed it certainly was a most unique one, and it is most improbable that any reasonable man would thus place his right to receive compensation for his services entirely at the whim and discretion of the party to whom these services are rendered.

> "Of course, it would be too much to say that parties could not make such a shadowy contract as the defense contends for, but it would be so strange and unusual a thing to do, that clear and convincing evidence should be required to prove it."

### Coombs vs. Beede (89 Maine, 187) 56 Am. St. Rep. 406.

In the present case the proof preponderates in favor of the non-existence of such an agreement as the defendant relies upon, and in reaching this conclusion, the Court finds that the presumption of the non-existence of such a one-sided agreement is fortified by certain uncontradicted facts disclosed by the record:

There is the interview that occurred between the defendant and Diboll, the president of the plaintiff corporation, and what was said or done at that conference stands unimpeached in the testimony of the latter. On this occasion the defendant called at the offices of the plaintiff after having been billed by the latter for the services rendered in the preparation of the plans and specifications. At this interview Diboll made the positive and unequivocal assertion to defendant that no agreement as to maximum cost existed and this assertion the defendant not only failed to challenge or dis-

pute, but actually offered to pay plaintiff the sum of one hundred dollars ($100) as compensation for the services rendered. This offer of payment was made unconditionally and without reserve, and following immediately the unchallenged statement of Diboll as to the non-existence of the maximum cost stipulation, most strongly supports and corroborates plaintiff's version of the contract.

Furthermore, the theory of defendant that the plans and specifications were warranted to provide a house whose cost would not exceed a fixed sum, is destroyed by the fact itself that this sum maximum cost nowhere, not even in the testimony adduced by the defendant, "fixed" with any precision whatever. In one place he shows it to be $6,500, in another $7,000 or more, while at the interview with Diboll, above referred to, he admits he would have been willing to expend $8,000. This uncertainty in itself leaves no doubt that there was no fixed and conclusive cost agreed upon nor any unalterable instruction, direction or warranty with regard thereto.

The unchallenged statement of the non-existence of the limitation made in the presence of the defendant; the unconditional offer of defendant to pay one hundred dollars; the uncertainty as to the exact amount of the limitation, if any existed; the proof that the defendant was actually willing to spend $8,000.00 upon the structure, all these facts, taken in connection with the presumption against plaintiff making any bargain that would render its right to compensation dependent solely upon the mere whim and caprice of the defendant, are strongly corroborative of the existence of a contract as testified to by Owen, and destructive of defendant's contention that the plaintiff contracted and warranted that the plans and specifications would provide a residence that could be erected for a fixed sum.

Add to these incidents the fact that the plans and specifications when originally submitted by plaintiff did in fact provide for a structure that could be erected within a cost of $7,000, and the further fact that the only reason that the final plans and specifications called for a house that could not be erected for less than $8,288.00, was that defendant and his wife, though notified that the cost would be thereby increased, insisted upon amendments and amplifications to these plans and specifications that were not contemplated at the time when the plaintiff was employed in the first instance, and the plaintiff's right to recover fair compensation for its services is established, even upon defendant's version of the contract.

The rule has been established that where an architect who is under contract to furnish plans and specifications for a building to cost a fixed amount, furnishes plans for a building that would cost in excess of that amount, but proposes certain reductions that would make the plans apply to a building whose cost would not exceed the limitation fixed, he has complied with his contract and is entitled to his compensation.

### Marquis vs. Lauretson, 76 Iowa 23, N. W. 73.

It would follow that where an architect who is employed to make plans for a building whose cost will not exceed a certain sum, submits plans in full compliance with this agreement, he is entitled to his compensation and cannot be deprived of it by the action of the owner in insisting upon various additions and embelishments that were not contemplated when the contract of employment was entered into.

Furthermore, if any limitation at all existed, the evidence leaves in doubt whether this limitation was $6500, or 7000 or $8000; and if the maximum figure should be

adopted as the true limitation, the fact that the building as finally planned could have been built for $8288, shows a substantial compliance on the part of plaintiff with its contract, and a substantial compliance is all that is required.

Smith vs. Dickey, 74 Tex. p. 61, (11 S. W. 1049.)

Upon the whole the Court is satisfied as to the right of plaintiff to recover renumeration for its services and the question at issue is narrowed down, in the absence of an agreement as to compensation, to the amount that plaintiff is entitled to receive for these services.

Upon this question the record presents facts and elements similar to those that were before the Supreme Court in the case of **Sully & Burton, Liquidators vs. Pratt, 106 La. Rep. p. 601,** and leaves this compensation to be fixed at such sum as appeals to the sense of justice and equity of this Court. In allowing plaintiff a compensation of $150.00, justice will be meted out ''as near as can be between the parties according to our appreciation of the case.''

It is therefore adjudged and decreed that the judgment appealed from be annuled, avoided and reversed, and that there now be judgment in favor of the plaintiff and against the defendant in the sum of $150.00 with interest thereon at the rate of five per cent, from judicial demand —namely, April 22, 1908, defendant to pay costs of both courts.

December 13, 1909.

Rehearing refused, January 10, 1910.